UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KUMAR INDUSTRIES AND BAJAJ HEALTHCARE LIMITED<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Court No. 25-00081 |

## COMPLAINT

Plaintiffs Kumar Industries ("Kumar") and Bajaj Healthcare Limited ("Bajaj") (collectively "Plaintiffs"), by and through its attorneys, Fox Rothschild LLP, allege and state as follows:

### THE ADMINISTRATIVE DECISION TO BE REVIEWED

1. Plaintiffs contest certain aspects of the final determination of the antidumping administrative review *Glycine from India* (A-533-883) issued by the International Trade Administration of the United States Department of Commerce ("Commerce" or "the Department"). The final results of the administrative review covered Plaintiffs' exports of glycine from India that entered into the United States during the ("POR"), between June 1, 2022 and May 31, 2023.

2. Commerce issued the contested final results on April 9, 2025, and notice of the final results were published in the Federal Register on April 15, 2025. *See Glycine from India: Final Results of Antidumping Duty Administrative Review; 2022-2023*, 90 Fed. Reg. 15689 (April 15, 2025) ("Final Results") . The findings and conclusions of the contested determination

were set forth in an accompanying Issues and Decision Memorandum for the Final Determination dated April 9, 2025. ("I&D Memo").

## JURISDICTION

3.  Plaintiffs bring this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii) to contest the aforesaid Final Results. This Court has sole jurisdiction over this matter under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

## STANDING

4.  Plaintiffs, Indian producers and exporters to the United States of glycine, are interested parties within the meaning of 19 U.S.C. § 1677(9)(A) and 19 U.S.C. § 1516a(f)(3). As interested parties that actively participated in the underlying administrative proceeding, Plaintiffs have standing to bring this action pursuant to 19 U.S.C. § 1561a(d) and 28 U.S.C. § 2631(e).

## TIMELINESS

5.  This action is timely as this Complaint is being filed within 30 days of the filing of the Summons that initiated this case. *See* Rule 3(a)(2) of the Rules of the U.S. Court of International Trade and 28 U.S.C. § 2636(c).

## STANDARD OF REVIEW

6.  This Court reviews final determinations of antidumping administrative reviews issued by Commerce pursuant to 19 U.S.C. § 1675(a) to determine whether they are "unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## STATEMENT OF FACTS

7.  Commerce initiated the contested administrative review on August 7, 2023. *Glycine from India: Initiation of Antidumping Administrative Review*, 88 Fed. Reg. 51271

(August 3, 2023). Kumar Industries participated in this review as a mandatory respondent and fully responded to all of Commerce's information requests in a complete and timely manner. Kumar responded to Sections A through D of the initial questionnaire and to several supplemental questionnaires.

8. Bajaj appeared in this review, though it was not selected for individual examination as a mandatory respondent. Commerce assigned Bajaj the separate rate of zero in the preliminary results of this administrative review. *See Glycine From India: Preliminary Results and Rescission, In Part, of Antidumping Duty Administrative Review; 2022-2023*, 89 Fed. Reg. 55565 (July 5, 2024) ("Preliminary Results"). In the Final Results, Commerce assigned Bajaj a separate rate of 28.59 percent based upon the simple average, rather than the weighted-average, of the dumping margins for the two mandatory respondents.

9. This appeal concerns Commerce's application of total adverse facts available ("total AFA") to Kumar on the basis that it withheld information that prevented Commerce from determining whether Company A, Company B, Company C, or Company D were affiliated with Kumar during the POR.

10. During the POR, Company A purchased a substantial portion of Kumar's home market sales of glycine. Kumar purchased from Company B a substantial portion of its inputs used in the production of glycine, including ammonia, hexamine, and monochloro acetic acid.

11. Prior to the initial investigation, partners of Kumar had been owners of Company A and Company B but sold their interest in those companies and retained no interest or control over their business operations. However, on April 1, 2023 which is during the current period of review on appeal, partners in Kumar became partners in Companies A and B. Kumar provided documentation to establish the nature of its partners' relationships to Companies A and B

3

throughout the POR.  Kumar further provided documentation showing that it was not affiliated with Company A or Company B during the first 10 months of the POR (*i.e.* June 1, 2022 – March 1, 2023).

12.     Prior to the initial investigation, Kumar had also been affiliated with Company C and Company D.  Kumar submitted documentation on the record showing that its partners divested from Companies C and D and resigned from those companies' boards prior to the POR, following a dispute with other partners in Companies C and D.  The record also shows that both companies closed their operations well prior to the POR, and that they were in the process of being removed from the national company registry.  Kumar maintained throughout the administrative review that it was not affiliated with Companies C or D during the POR.

13.     In Kumar's Section A Response, Kumar included Company A and Company B among its reported affiliates after Kumar's partners became partners in those companies on April 1, 2023.  Further, Kumar reported that it was not affiliated with Companies C and D during the POR, and that the companies had yet to be removed from the registry of companies due to an ongoing business dispute.

14.     In response to Commerce's supplemental questionnaires, Kumar provided additional information showing that Companies A and B became affiliated with Kumar within the meaning of 19 U.S.C. § 1677(33)(A)-(G) during the POR.  Kumar also provided in those questionnaire responses additional information showing that Companies C and D were not affiliated with Kumar during the POR.

15.     During the review, Commerce never requested that Kumar modify how it reported Company A's resales of its purchases from Kumar, nor did it request that Kumar modify how it reported Company B's input purchases.  Further, Commerce never requested that Kumar provide

additional documentation related to Companies C and D to substantiate the lack of affiliation between the companies, nor did it request that Kumar revise its databases to reflect a perceived affiliation with Companies C and D.

16. Commerce published the preliminary results in the Federal Register on July 5, 2024. *See Glycine From India: Preliminary Results and Rescission, In Part, of Antidumping Duty Administrative Review; 2022-2023*, 89 Fed. Reg. 55565 (July 5, 2024). In the Preliminary Results, Commerce found that Kumar did not make sales of subject merchandise at less than normal value during the POR and calculated a weighted average dumping margin of 0.00% for Kumar. Commerce determined in the Preliminary Results that Kumar was affiliated with Companies A and B, and made no mention of Companies C and D. *See Preliminary I&D Memo* at 4.

17. On August 5, 2024, Petitioners filed a case brief in the administrative review contending that Commerce should apply total AFA to Kumar due to an alleged failure to comply to the best of its ability when responding to Commerce's questionnaires. Specifically, Petitioners alleged that Kumar did not provide sufficient evidence to support that Kumar became affiliated with Companies A and B on April 1, 2023, and that Kumar failed to fully respond to Commerce's requests for information related to Companies C and D. On August 13, 2024, Kumar filed a rebuttal case brief, arguing that it fully complied with Commerce's investigation, and provided all information that it could related to Companies A, B, C, and D.

18. On April 9, 2025, Commerce issued its Final Results for the administrative review. *See I&D Memo*. In the Final Results, Commerce applied total AFA to Kumar, establishing a weighted average dumping margin of 57.17 percent. The Final Results was the first time that Kumar was made aware that Commerce found its responses related to Companies

A, B, C, and D to be deficient. Commerce justified its application of facts available with an adverse inference, by stating that Kumar withheld information regarding its affiliation with Companies A, B, C, and D. *Final Application of AFA to Kumar Industries Memorandum* at 3-6, and 4-10.

19. On April 15, 2025, Commerce published the Final Results in the Federal Register. *See Glycine from India: Final Results of Antidumping Duty Administrative Review; 2022-2023*, 90 Fed. Reg. 15689 (April 15, 2025). Based on its application of total AFA to Kumar, Commerce also modified the antidumping rate for Bajaj, by calculating the simple average of Kumar's AFA rate of 57.17 and the zero rate assigned to the other mandatory respondent,, resulting in a separate dumping margin of 28.59 percent.

20. On April 30, 2025, Kumar and Bajaj filed a timely summons to initiate this action.

### STATEMENT OF CLAIMS AND BASES FOR RELIEF

Plaintiffs challenge the Final Results of the administrative review for the following reasons:

### COUNT 1

21. Paragraphs 1-20 are incorporated by reference herein.

22. The statute permits Commerce to apply AFA if information is missing from the record or a party withholds information requested by Commerce. 19 U.S.C. §§ 1677e(a)(1) and 1677e(a)(2)(A).

23. In its initial and supplemental questionnaire responses, Kumar reported that it became affiliated with Companies A and B on April 1, 2023, and provided documentary evidence to support its assertion. Further, in its questionnaire responses, Kumar provided evidence supporting its lack of affiliation with Companies C and D during the POR. Therefore,

the administrative record contained sufficient evidence to determine when and if Kumar was affiliated with Companies A, B, C, and D.

24. Accordingly, Commerce's determinations in the Final Results that: (1) there was insufficient information on the record for Commerce to determine whether Kumar was affiliated with Company A or Company B prior to April 1, 2023, (2) there was insufficient information on the record for Commerce to determine whether Kumar was affiliated with Company C and D, and (3) Kumar withheld information concerning whether it was affiliated with Companies A, B, C, or D; were unsupported by substantial evidence in the administrative record or were otherwise not in accordance with law.

## COUNT 2

25. Paragraphs 1-24 are incorporated by reference herein.

26. The statute permits Commerce to use an adverse inference in the application of facts available only if it determines that an interested party "failed to cooperate by not acting to the best of its ability to comply with a request for information" from Commerce by withholding necessary. 19 U.S.C. § 1677e(b). The reviewing courts have determined that not cooperating to the best of one's ability requires Commerce to make a separate analysis and specify the basis for its determination, and that it is insufficient for Commerce to merely restate the statutory standard under 19 U.S.C. § 1677e(a)(2)(A). *See, e.g., NSK Ltd. v. United States,* 481 F.3d. 1355, 1361 (Fed. Cir. 2007); *ABB, Inc. v. United States,* 355 F. Supp. 3d 1206, 1223 (Ct. Int'l Trade 2018).

27. In the Final Results, Commerce determined that Kumar did not act to the best of its ability due to its failure to sufficiently respond to Commerce's information requests. *I&D Memo* at 5-10. In its decision, Commerce did not adequately explain why the information Kumar submitted was deficient or unreliable such that the record was incomplete, nor did it

articulate a sufficient basis for its finding that Kumar failed to act to the best of its ability.

28. In the event that Commerce's application of facts available under Count 1 is affirmed, Commerce's failure to articulate a reason that Kumar did not act to the best of its ability was unsupported by substantial evidence and was otherwise contrary to law.

### **COUNT 3**

29. Paragraphs 1-28 are incorporated by reference herein.

30. In the event that Commerce's application of facts available under Count 1 is affirmed, Commerce should have applied neutral facts available to fill in the gap of any perceived missing information, rather than total AFA.

31. Kumar responded to the best of its ability to Commerce's requests for information regarding the nature of its affiliations with Companies A, B, C and D.

32. Accordingly, Commerce should have used neutral facts available with respect to Kumar's home market sales to Company A prior to April 1, 2023. For example, Commerce could have conducted its standard "arms' length test for sales to affiliates to determine whether Kumar's home market sales prices to Company A should have been excluded from the margin calculation. *See* 19 U.S.C. § 1677b(f)(2).

33. Commerce also should have applied neutral facts available with respect to Kumar's purchases of raw material inputs from Company B prior to April 1, 2023. For example, Commerce have adjusted Kumar's reported cost of production by substituting the cost of inputs purchases from Company B with the market price of the relevant inputs established by Kumar's other unaffiliated suppliers or the input prices established from the response of the other mandatory respondent.

34. Commerce's use of total adverse facts available, rather than neutral facts

available in both instances, was unsupported by substantial evidence in the administrative record and was otherwise contrary to law.

## COUNT 4

35.  Paragraphs 1-34 are incorporated by reference herein.

36.  The statute provides that respondents are to be given an opportunity to cure or remedy deficiencies in their responses. 19 U.S.C. §1677m(d). The reviewing courts have determined that Commerce abuses its administrative discretion when it does not provide a party an opportunity to correct errors in its responses prior to the preliminary determination. *See e.g., NTN Bearing Corp. v. United States*, 74 F. 3d 1204, 1208-09 (Fed Cir. 1995); *Timken Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006).

37.  Commerce's Final Results were the first time Commerce indicated that it would not accept Kumar's responses regarding its affiliation with Company A or Company B prior to April 1, 2023, and its lack of affiliation with Company C or D during the entirety of the POR. At no point in the review did Commerce note that Kumar's responses were deficient regarding these companies. At no point in the review did Commerce specifically request that Kumar report Company A's resales of its purchases from Kumar prior to April 1, 2023, as home market sales in the Section B Response. Further, at no point in the review did Commerce specifically request that Kumar report Company B's input purchases of its sales to Kumar prior to April 1, 2023, in Kumar's Section D response. Commerce also failed to request further information related to the scope of Companies C's and D's businesses or potential affiliation between Kumar and these companies during the POR.

38.  Commerce's findings in the Final Results were a complete surprise, since it had found in the Preliminary Results that Kumar did not make sales of subject merchandise at less

than normal value, and noted no issues with Kumar's reporting of its affiliations, or lack thereof, with Companies A, B, C, and D. There was no indication between the issuance of the Preliminary and Final Results that Kumar's reporting of its affiliations was deficient or contradictory. If Commerce suddenly became dissatisfied with Kumar's responses following the Preliminary Results, Commerce should have given Kumar the opportunity in a post-preliminary supplemental questionnaire to provide information relating to Companies A, B, C, and D.

39. Commerce's failure to allow Kumar an opportunity to cure any perceived deficiencies in its responses prior to the Final Results was unsupported by substantial evidence in the administrative record and was otherwise contrary to law.

## COUNT 5

40. Paragraphs 1 through 39 are incorporated by reference herein.

41. Commerce's determination to calculate the separate rate for Bajaj by taking the simple average of Kumar's AFA rate and the zero-rate assigned to the other mandatory respondent, resulting in a weighted dumping margin of 28.59 percent, is contrary to law.

42. Pursuant to 19 U.S.C. § 1673d(c)(5)(B), the expected method for calculating a separate rate in cases where all rates for the individually examined respondents are zero or entirely based on AFA, is to weight-average the zero margins and the AFA margins, provided that volume data is available.

43. Commerce's calculation of Bajaj's separate rate using a simple average and its failure to explain why it departed from the expected method of employing a weighted average calculation methodology was unsupported by substantial evidence in the administrative record and was otherwise contrary to law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

a) hold that Commerce's Final Results were unsupported by substantial evidence on the administrative record and was otherwise not in accordance with law with respect to the claims advanced by Plaintiffs in this Complaint;

b) remand the Final Results to Commerce with instructions to correct its errors and to complete the administrative review by incorporating Kumar's information in accordance with the Court's decision.

                                              Respectfully submitted,

                                              */s/ Alexander D. Keyser*
                                              Lizbeth R. Levinson
                                              Brittney R. Powell
                                              Alexander D. Keyser

                                              FOX ROTHSCHILD LLP
                                              2020 K Street,
                                              NW Suite 500
                                              Washington, DC  20006
                                              Tel: (202) 794-1183
                                              Email: akeyser@foxrothschild.com

                                              *Counsel to Plaintiffs Kumar Industries and Bajaj Healthcare Limited*