**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: The Honorable Jennifer Choe-Groves, Judge**

| | |
|---|---|
| KUMAR INDUSTRIES AND BAJAJ HEALTHCARE LIMITED<br><br>      Plaintiffs,<br><br>      v.<br><br>THE UNITED STATES,<br><br>      Defendant.<br><br>      And<br><br>DEER PARK GLYCINE, LLC<br><br>      Defendant-Intervenor. | Court No. 25-00081<br>**Public Version** |

**<u>PLAINTIFFS' REPLY BRIEF</u>**

Respectfully submitted,

*/s/ Lizbeth R. Levinson*

FOX ROTHSCHILD LLP
2020 K Street, NW Suite 500
Washington, DC 20006
Phone:  202) 794-1186

*Counsel to Kumar Industries and Bajaj*
*Healthcare Limited*

April 14, 2026

**TABLE OF CONTENTS**

I.    Introduction ..................................................................................................... 1

II.    Kumar Never Withheld Requested Information, Missed Any Deadlines, or Impeded
the Progress of these Administrative Review Proceedings Concerning the Affiliation
Between Kumar and Companies A and B .................................................................. 2

III.    Although Kumar Was Unable to Produce All Documents Requested Concerning
Companies C&D, Certain Financial Records Were Not In its Control; Hence Kumar
Should Not Be Penalized for its Failure to Produce These Records............................ 7

IV.    The Government's Waiver Argument Regarding the Calculation of the Separate Rate
Misconstrues Both the Record and Governing Law ..................................................... 9

V.    Conclusion ..................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

19 U.S.C. § 1673d(c)(5)..............................................................................................9

19 U.S.C. § 1677e.....................................................................................................8

Section 776(a)(1) ......................................................................................................6

Section 776(a)9(2)(C)................................................................................................6

**Cases**

*Beijing Tianhai Indus. Co., Ltd. v. United States,*
 *234 F. Supp. 3d 1322 (July 5, 2017)*.......................................................................9

*Guizhou Tyre Co. v. United States,*
 43 CIT ___, ___, Slip Op. 19-59 (May 15, 2019) ........................................... 5-6

*Hyundai Electric & Energy Sys. Co., Ltd. v. United States,*
 15 F.4th 1078 (Fed. Cir. 2021) ..............................................................................8

*Novosteel SA v. United States,*
 284 F.3 1261 (Fed. Cir. 2002)................................................................................9

*PrimeSource Bld. Prods. v. United States,*
 111 F.4th 1320 (Fed. Cir. 2024) ............................................................................9

*Thai Pineapple Canning Indus. Corp. v. United States,*
 273 F.3d 1077 (Fed. Cir. 2001).............................................................................10

*United States v. Ford Motor Co.,*
 463 F.3d 1267 (Fed. Cir. 2006)..............................................................................9

*Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,*
 716 F. 3d 1370 (Fed. Cir. 2013).............................................................................10

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: The Honorable Jennifer Choe-Groves, Judge**

| | |
|---|---|
| KUMAR INDUSTRIES AND BAJAJ HEALTHCARE LIMITED<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant.<br><br>And<br><br>DEER PARK GLYCINE, LLC<br><br>Defendant-Intervenor. | Court No. 25-00081<br>**Public Version** |

**PLAINTIFFS' REPLY BRIEF**

Pursuant to Rule 56.2 (d) of the Rules of the United States Court of International Trade, and this Court's Order of March 25, 2026 (ECF No. 42), Plaintiffs Kumar Industries ("Kumar") and Bajaj Healthcare Limited ("Bajaj") respectfully submit this Reply Brief.

I.    **Introduction**

The Defendant's Response to Plaintiff's Motion for Judgment on the Agency Record ("Defendant's Response Br.") illustrates that the Government is not "not seeing the forest for the trees." The Government has lost sight of the big picture (the calculation of an accurate antidumping duty margin, the ultimate purpose of this administrative review) and has instead focused exclusively on particular internal business dealings within the Chopra family that relate primarily to periods of time outside of the period of review ("POR").  In fact, many of the

1

documents (such as retirement deeds or an environment application) spoken about in length in the Government's brief predate the commencement of this review (in some cases, by a full decade) and have been addressed in excruciating detail in previous administrative reviews.

Kumar Industries requested this 2022-2023 review and has participated fully in an effort and hope of finally "getting a fair shake." Its perseverance to seek favorable results from the Department of Commerce "Commerce") is alone a testament to its determination to cooperate, especially in this review, having been struck with adverse facts available ("AFA") for the past three reviews. The application of AFA in the previous three reviews, and in this 2022-2023 review has been a drastic blow to the company, preventing it from exporting to the United States and causing it to exorbitant financial harm. Yet, it has persisted in an ardent effort to cooperate and eliminate all dumping from its U.S. sales (demonstrated by the zero percent dumping margin that was assigned to it in the preliminary results in this POR). With the exception of the preliminary determination in this review, Commerce has failed entirely to conduct any calculation of possible antidumping duties and has been distracted and blinded by discrepancies in documents not atypical for a very small Indian company that do not in any way undermine the credibility of the reported affiliations and sales data, but mostly relate to previous administrative reviews.

II.    **Kumar Never Withheld Requested Information, Missed Any Deadlines, or Impeded the  Progress of these Administrative Review Proceedings Concerning the Affiliation Between Kumar and Companies A and B**

Kumar acknowledges fully that the issue of affiliation is critical to an antidumping duty investigation. Despite the Government's assertions, however, Kumar has been entirely forthright in declaring that Kumar was affiliated with Companies A and B during the POR in question (even though the companies had not been affiliated in previous reviews). The company reported from the outset that partners of Kumar became partners in Companies A and B effective April 1,

2

Public Version

2023 (in the eleventh months of the current POR). *See id.* at 6 and Exhibit A-5(h) (C.R. 8 and 10).  There is no ambiguity concerning this issue on this record.

In its preliminary determination, Commerce noted specifically that the record evidence in this review showed that that Companies A and B were affiliated with Kumar.  *See* Preliminary Analysis Memo (C.R. 151); *see also* Decision Memorandum for the Preliminary Results of the Administrative Review of the Antidumping Duty Order on Glycine from India; 2022-2023 (P.R. 169)  Due to the affiliation, Kumar submitted the sales registers for both Companies A and B during the POR in the First Supplemental Section A Response. *See* Exhibits A-37 (Company A's Sales Register) and A-36 (Company B's Sales Register) (C.R. 126). Company A's sales register shows that it did not make any sales to Kumar during the POR. *See* Exhibit A-37 (C.R. 126). Company B's sales register shows that while it did make sales of some products to Kumar during the POR, all of the merchandise sold pertained to non-merchandise under consideration, and did not involve inputs required to produce glycine. *See* Exhibit A-36 (C.R. 126) and *compare* with Initial Section D Response at Exhibit D-3 (List of Raw Materials to Produce Glycine) (C.R. 29).

The same evidence cited above should have been sufficient to support a finding that Company A and Company B were affiliated for purposes of the Final Results. Yet, inexplicably, Commerce found it necessary to re-visit evidence from three prior reviews in order to examine whether Kumar and Companies A and B were affiliated during the first ten months of the POR. Commerce's mandate, which it pursued in the preliminary determination but wrongly abandoned in the final determination, was to apply the record evidence from this review showing an affiliation between Kumar and Companies A and B.

Instead of focusing on the relationship between Kumar and Companies A and B during the POR, the Government has become distracted by the irrelevant issue of whether Kumar was

3

Public Version

related to Companies A and B during the past administrative reviews. *See* Government Brief at

21. The Government states, for example, that "Kumar failed to explain the proximate reason for

sharing an office location with Kumar's affiliates in 2020, when Kumar was allegedly not

affiliated with Company A." *Id.* First. the reason the companies may have shared physical

premises in 2020 is entirely irrelevant to the issue of whether they are affiliated in this

administrative review. Second, the Government acknowledges that Kumar did in fact respond to

the question by explaining that the shared offices were legal. This statement constitutes a

response. This is not an example of Kumar withholding request information, as the Government

asserts. It is an acknowledgment that the companies did share space, which is entirely legal and

by its response, Kumar appears to imply that shared space is not a sign of affiliation. [1] But the

issue of whether Kumar was affiliated with Company A, or even whether they shared space in

2020 is indicative of affiliation prior to this review, is entirely irrelevant in this review in which

Kumar has acknowledged from the outset that it is affiliated with Company A.

The same defects exist in the Government's other arguments that relate overwhelmingly

to events preceding the POR. The Government states, for example, that "Kumar failed to

explain how [

]. This retirement deed relates to Company B

and specifically whether Kumar was related to Company B, an issue that existed in prior

administrative reviews but is no longer an issue in this review. While this issue may have been

relevant in previous review in which Kumar stated that it was not affiliated with Company B, in

---

[1] Significantly, the representatives of Kumar Industries participating in the review are not native English speakers, and the company has been unable to afford U.S. counsel. Instead, the consultants assisting Kumar in this review are likewise Indian nationals and not attorneys.

4

Public Version

the present review Kumar has substantiated that it is affiliated with Company B, and therefore there is no need to determine the events surrounding the May 5, 2013 retirement deed and how they relate to claims of lack of affiliation.

The Government is once again wrong in stating that Kumar withheld information, or impeded the administrative proceeding by failing to respond to the questions concerning the May 5, 2013 retirement deed.  In its Second Supplemental Response dated March 28 2024, Commerce asked "how the signature of [

]."  (C.R. 129 at 11).   Kumar's response is over six paragraphs long, and explains that [

] signed the retirement deed on his death bed while he was still competent to do so.  In fact, Kumar's response to Commerce's question about this retirement deed explains that [

] actually signed two retirement deeds on that date, presumably in anticipation of his imminent death.  (C.R. 129 at 10). The date of the document, May 5, 2013, was the date that the document was processed with the Government authorities.  *See* Kumar's April 1, 2024 First Supplemental Response  (C.R. 73 at Exh. 19).  The document itself does not state that May 5, 2013 was the date that the signatures were obtained.   These facts were also conveyed to the Department in Kumar's April 1, 2024 First Supplemental Response (C.R. 73 at 17).

The Government's other examples of instances in which Kumar supposedly withheld evidence similarly simply fail to support their argument.  In fact, a perusal of all Kumar's responses to the supplemental questionnaires issued by Commerce demonstrates a response to each question related to Companies A and B.  The Government has not identified a single instance in which Kumar refused outright to respond to a question or left a response black.  There is simply no necessary information missing that would justify the application of AFA to

5

Public Version

fill gaps in the administrative record. *See e.g. Guizhou Tyre Co. v. United States*, 43 CIT ___, ___, Slip Op. 19-59 at 7 (May 15, 2019) (before Commerce can apply adverse facts available it must determine that any gap in the administrative record "was caused by a respondent's failure to cooperate."). While the Government provides lip service to the statute by observing claiming that Kumar withheld information requested by Commerce  and that allegedly necessary information is not on the record within the meaning of Section 776(a)(1) of the Act, the Government does not actually identify a single document related to Companies A or B that Kumar failed to provide in response to a request from Commerce. *See* Defendant's Response Br. at 16.

Commerce's Issues and Decision Memorandum ("I&D Memo") and its Final AFA memo suffer from the same defects as the Government's Brief in that they each fail to identify any missing information, despite the allegation that "Kumar withheld necessary information requested by Commerce within the meaning of Section 776(a)9(2)(C)." *See* I&D Memo for Final Results (P.R. 202 at 4); Memo to the File Concerning Final Application of Adverse Facts Available ("AFA Memo"). (P.R. 205). According to Commerce, Kumar's lack of cooperation impeded Commerce's ability to calculate an accurate dumping margin for Kumar in this administrative review and impugned the integrity of Kumar's database. *Id*.

Commerce's position is puzzling, however, because it did indeed calculate an accurate dumping margin in the preliminary results based on the exact same record evidence that existed at the time of the final determination. Suddenly, Commerce claims that the evidence does not permit it to determine whether Kumar is affiliated with Companies A, B, C and D. I&D Memo (P.R. 202 at 4). The record evidence submitted by Kumar, however, and relied upon in the preliminary determination, clearly shows that it is affiliated with Companies A and B. Kumar reported that it shared common managing partners, shareholders and managing directors with Companies A and B.

6

*See* Decision Memorandum for the Preliminary Results ( P.R. 169).  There is no evidence on the record to the contrary.  Although Commerce clearly views with suspicion Kumar's explanations regarding the nature of the affiliations with Companies A and B (notwithstanding its insistence in past reviews that the companies were indeed related), the agency failed to articulate the specific information that Kumar withheld that prevented it from relying on the exact same evidence in the final results.  This failure to articulate the nature of the missing information, or to rebut the evidence on the record showing affiliation between Kumar and Company A establishes that Commerce's AFA determination is unsupported by substantial evidence on the record and otherwise contrary to law.

**III.     Although Kumar Was Unable to Produce All Documents Requested Concerning Companies C&D, Certain Financial Records Were Not In its Control; Hence Kumar Should Not Be Penalized for its Failure to Produce These Records**

Commerce also claims that Kumar withheld information regarding Companies C and D, further justifying total adverse facts available.  *See* AFA Memo at 5-6 (C.R. 172).  Kumar provided a list of affiliates in the initial Section A Response, and explained that members of the [

] have ownership interests in the affiliated companies that were listed in Exhibit A-3. *See* Initial Section A Response, October 5, 2023 at 7  (C.R. 8). Companies C and D were among those companies listed in Exhibit A-3. *See* Exhibit A-3 (C.R. 10).  Kumar also clarified in the same response and exhibit that the partners of Kumar submitted their resignation letters to both Company C and Company D in [        ]. *See* Exhibit A-3 (C.R. 10); *see also* First Supplemental Section A Response, dated April 1, 2024 at Exhibit A-28 (Kumar's September 16, 2021 Section A Response for the 2nd Administrative Review) (C.R. 85-86).

Kumar also explained that due to an unresolved financial dispute between the [

] and another family with interests in these companies, the [                    ], those

7

Public Version

companies have been unable to complete the process of removing or striking the names of the [

] members from the official registry of Companies C and D. *See* Exhibit A-3

(C.R. 10).   The conflict between the families has limited Kumar's access to documents

requested by Commerce notwithstanding Kumar's best efforts.  While Kumar acknowledges that

it was not able to produce financial statements, the reasons for the difficulties encountered were

explained fully during the investigation.  Kumar informed Commerce that it had no access to or

control over Companies C and D, and therefore did not have access to those companies' account

financial statements for the requested periods. *See* April 1, 2024 First Supplemental Response at

20 (C.R. 73).  Kumar explained further that Company D [

] and informed the Central Excise Department of India of its [

]. *See id.* at 19-20 (C.R. 73). Kumar also stated that there were no transactions between

itself and Company C and D, whether related to glycine or any other merchandise during the

POR. *See id.* at 21 (C.R. 73).

Under U.S. trade law (19 U.S.C. § 1677e), AFA is primarily intended to penalize parties

that fail to cooperate by not acting to the best of their ability to produce information in their

possession or that they should have maintained. The Federal Circuit has held that an adverse

inference cannot be drawn "merely from a failure to respond, but only under circumstances in

which it is reasonable for Commerce to expect that more forthcoming responses should have

been made." *Hyundai Electric & Energy Sys. Co., Ltd. v. United States*, 15 F.4th 1078, 1090

(Fed. Cir. 2021) (internal citations omitted).  While external forces over which Kumar had no

control prevented Kumar from producing financial statements for these two companies, Kumar

should not be penalized with AFA where it did not have the power to obtain the documents

notwithstanding its best efforts.

8

Public Version

**IV.    The Government's Waiver Argument Regarding the Calculation of the Separate Rate Misconstrues Both the Record and Governing Law**

The Government asserts that Bajaj has waived its argument that Commerce did not meet its burden to deviate from the expected method in calculating the separate rate, on the basis that the opening brief did not explicitly invoke the holding in *PrimeSource Bld. Prods. v. United States*, 111 F.4th 1320, 1330 (Fed. Cir. 2024).  Defendant's Response Br. at 35.  The Government argues that Bajaj waived its argument that Commerce's separate rate calculation was unreasonable because it "only made bare allegations and did not cite relevant legal authority." *Id.* at 36. This position is plainly wrong.  The core contention raised in the opening brief – that Commerce's use of a simple average of a zero rate and a rate based on adverse facts available was not a "reasonable" method within the meaning of 19 U.S.C. § 1673d(c)(5)(B) – was clearly presented and fully preserved.[2]

The waiver doctrine does not impose a requirement that a party must cite a particular case to preserve a legal argument. Rather, the doctrine of waiver is "a prudential rule, and considerations of 'litigation fairness and procedure' may guide a court's decision as to whether a party has waived an issue." *Beijing Tianhai Industry Co., Ltd. v. United States*, 234 F. Supp. 3d 1322, 1331 (July 5, 2017).  The doctrine exists to ensure that parties "give a trial court a fair opportunity to rule on an issue other than by raising that issue for the first time in a reply brief," *Novosteel SA v. United States*, 284 F.3 1261, 1273-74 (Fed. Cir. 2002), and to ensure that other

---

[2] Contrary to Defendant's claim that Commerce did not have reliable sales information to use when calculating a weighted average because Kumar's volume data was unreliable, the record does contain volume information for both mandatory respondents.

9

Public Version

parties are provided an opportunity to respond. *See Beijing Tianhai Indus. Co., Ltd.*, 234 F. Supp. 3d at 1331 (citing *United States v. Ford Motor Co.,* 463 F.3d 1267, 1277 (Fed. Cir. 2006)).

Defendant's waiver theory elevates form over substance.  Plaintiffs' opening brief squarely argued that Commerce unlawfully departed from the expected method by selecting a "reasonable method" under 19 U.S.C. § 1673d(c)(5) that was, in fact, unreasonable because it was based on the simple average of Avid Organic's zero rate and Kumar's aberrational AFA rate. *See* Plaintiffs' Opening Brief at 21-22. The simple average and inclusion of an AFA rate in the alternative methodology rendered a result that was distortive and punitive to Bajaj, a non-examined company with no control or responsibility for the issues that plagued Kumar in the administrative review. Those arguments directly implicate the same statutory principles discussed in *PrimeSource* (i.e. the calculation of the separate rate).  The absence of a specific citation to that decision does not transform a preserved argument into a waived one.  Moreover, Defendant had ample opportunity to address this core argument in its response brief.

Defendant argues further that Commerce's calculated all-others rate, based on a simple average of Avid's zero rate and Kumar's AFA rate, was reasonable.  *See* Defendant's Response Br. at 35. Although the Federal Circuit has affirmed the simple average of both zero and AFA rates in some cases, the Court has also stated that "it is possible for the application of a particular methodology to be unreasonable in a given case." *Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013) (citing *Thai Pineapple Canning Indus. Corp. v. United States*, 273 F.3d 1077, 1085 (Fed. Cir. 2001)).

Defendant highlights that Bajaj's suggestion to assign it the non-individually examined respondent's rate from the previous administrative review would be a departure from the expected method, and therefore must be justified with substantial evidence on the record.  *See*

10

Defendant's Response Br. at 37. Defendant further argues that Bajaj does not "demonstrate that the expected method was not feasible or resulted in a rate not reasonably reflective of its actual dumping margins." *PrimeSource*. 111 F.4[th] at 1380. It is clear that the only rates assigned to mandatory respondents were Avid Organic's zero rate and Kumar's AFA rate. Commerce's decision to calculate a simple average of those rates resulted in an inherently punitive and unrepresentative figure that was untethered to the economic reality of the non-examined respondent Bajaj. Indeed, in the Preliminary Results, Commerce calculated a zero rate for Kumar and a zero rate for Avid. But for Commerce's determination in the Final Results that Kumar withheld information related to its affiliates, Kumar's calculated antidumping margin would have been zero. The circumstances of this case demonstrate that the two examined companies' *calculated* margins were zero, which is presumed to be representative of the non-selected respondents. Commerce's separate rate calculation of 28.59 percent after applying AFA to Kumar Industries does not reflect commercial reality and does not accurately estimate Bajaj's dumping margin.

As explained in Plaintiffs' opening brief, Commerce approach defeats the purpose of the separate rate framework and results in an outcome that is neither neutral nor reasonably calculated.

## V.   Conclusion

For the foregoing reasons, Plaintiff Kumar respectfully requests that this Court find Commerce's application of total AFA to Kumar was not supported by substantial evidence on the record and was otherwise not in accordance with law. Plaintiff Bajaj respectfully requests that this Court hold Commerce's determination of a separate rate calculation in the amount of

11

Public Version

28.59 percent based on a simple average of Kumar's AFA rate and Avid's zero rate is not

supported by substantial evidence on the record and was otherwise not in accordance with law.

Respectfully submitted,
*/s/ Lizbeth R. Levinson*

Lizbeth R. Levinson
Brittney R. Powell
FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, D.C.
Tel: (202) 794-1186
Fax: (202) 461-3102
Email: llevinson@foxrothschild.com

Dated: April 14, 2026

12

Public Version

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel at Fox Rothschild LLP hereby certifies that the foregoing brief complies with the word-count limitation in the Standard Chambers Procedure. This brief contains 3,386 words according to the word-count function of the word-processing software used to prepare the brief.  This is less than the 7,000 words permitted for Rule 56.2 Motion brief.

Respectfully submitted,

*/s/ Lizbeth R. Levinson*

FOX ROTHSCHILD LLP
2020 K Street, NW Suite 500
Washington, DC 20006
Phone:  202) 794-1186

*Counsel to Kumar Industries and Bajaj Healthcare Limited*

April 14, 2026

13

Public Version