**Slip Op. 26-112**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **KUMAR INDUSTRIES AND BAJAJ HEALTHCARE LIMITED,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant,**<br><br>**and**<br><br>**DEER PARK GLYCINE, LLC,**<br><br>**Defendant-Intervenor.** | **Before: Jennifer Choe-Groves, Judge**<br><br>**Court No. 25-00081** |

**OPINION AND ORDER**

[Sustaining in part and remanding in part the U.S. Department of Commerce's final determination in the 2022–23 administrative review of the antidumping duty order of glycine from India.]

Dated: September 14, 2026

Lizbeth R. Levinson, Fox Rothschild LLP, of Washington, D.C., argued for Plaintiffs Kumar Industries and Bajaj Healthcare Limited. Alexander D. Keyser, Fox Rothschild LLP, of Washington, D.C., also appeared.

Samuel J. Harrison, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., appeared for Defendant United States. On the brief were Brett A. Shumate, Assistant Attorney General, Patricia M. McCarthy, Director, and Claudia Burke, Deputy Director. Of counsel on the brief was Samuel O. Agranovich, Attorney, Office of Chief Counsel for Trade

Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

David M. Schwartz, Michelle Meixuan Li, Kerem Bilge, and Aaron C. Mandelbaum, Thompson Hine LLP, of Washington D.C., appeared for Defendant-Intervenor Deer Park Glycine, LLC.

Choe-Groves, Judge: This action concerns the U.S. Department of Commerce's ("Commerce") determination in the 2022–23 administrative review of the antidumping duty order of glycine from India, during the period of June 1, 2022, to May 31, 2023. Glycine from India, 90 Fed. Reg. 15,689 (Dep't of Commerce Apr. 15, 2025) (final results of antidumping duty administrative review; 2022–2023) ("Final Results") and accompanying Issues and Decision Memorandum (Dep't of Commerce Apr. 8, 2025) ("Final IDM"), PR 202;[1] see also Glycine from India and Japan, 84 Fed. Reg. 29,170 (Dep't of Commerce June 21, 2019) (amended final affirmative antidumping duty determination and antidumping duty orders).

Before the Court is the Rule 56.2 motion for judgment on the agency record filed by Plaintiffs Kumar Industries ("Kumar") and Bajaj Healthcare Limited ("Bajaj") (collectively, "Plaintiffs"). Corrected Pls.' 56.2 Mot. J. Agency R. ("Pls.' Motion"), ECF Nos. 33, 34; see Corrected Mem. Points Authorities Supp. Pls.' 56.2 Mot. J. Agency R. ("Pls.' Br."), ECF Nos. 33-2, 34-2. The Court held

---

[1] Citations to the administrative record reflect the public record ("PR") and confidential record ("CR") numbers filed in this case, ECF Nos. 46, 47.

oral argument on July 7, 2026. Appearance Sheet (July 7, 2026), ECF No. 54. For the reasons discussed below, the Court sustains in part and remands in part Commerce's Final Determination.

**BACKGROUND**

In August 2023, Commerce initiated an administrative review of the antidumping duty order on glycine from India. See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 88 Fed. Reg. 51,271 (Dep't of Commerce Aug. 3, 2023). Commerce selected Kumar and Avid Organics Private Limited ("Avid") as mandatory respondents for individual examination. Respondent Selection Memorandum (Aug. 24, 2023) at 1, PR 21. Bajaj was selected as a respondent, but not selected for individual examination. Id. at 6. Commerce conducted administrative reviews previously of the antidumping order that involved Kumar as a respondent. See Glycine from India, 86 Fed. Reg. 62,508 (Dep't of Commerce Nov. 10, 2021) (final results of antidumping duty administrative review; 2018–2020) ("Final Results AR1") and accompanying Issues and Decision Memorandum (Dep't of Commerce Nov. 4, 2021); Glycine from India, 87 Fed. Reg. 67,870 (Dep't of Commerce Nov. 10, 2022) (final results of antidumping duty administrative review; 2020–2021) ("Final Results AR2") and accompanying Issues and Decision Memorandum (Dep't of Commerce Nov. 4, 2022); Glycine from India, 88 Fed. Reg. 77,552 (Dep't of Commerce Nov. 13,

2023) (final results of antidumping duty administrative review; 2021–2021) ("Final Results AR3") and accompanying Issues and Decision Memorandum (Dep't of Commerce Nov. 13, 2023).

Commerce sent an initial questionnaire to Kumar on August 24, 2023, followed by three supplemental questionnaires. Admin. Rev. Antidumping Duty Order Glycine India: Initial Questionnaire (Aug. 24, 2023) ("Initial Questionnaire"), PR 19; Fourth (2022-2023) Admin. Rev. Antidumping Duty Order Glycine India: First Supp. Questionnaire (Sections A-D) (Feb. 26, 2024) ("First Supp. Questionnaire"), PR 82; Fourth (2022-2023) Admin. Rev. Antidumping Duty Order Glycine India: Supp. Questionnaire (May 13, 2024) ("Second Supp. Questionnaire"), PR 143; Admin. Rev. Antidumping Duty Order Glycine India: Supplemental Questionnaire (June 24, 2024) ("Third Supp. Questionnaire"), PR 149. On June 27, 2024, Commerce published the preliminary determination of its investigation and determined that the mandatory respondents did not make sales of subject merchandise at less than normal value during the period of review. Decision Memorandum for the Preliminary Results of the Administrative Review of the Antidumping Duty Order on Glycine from India; 2022–2023 ("PDM"), PR 169 at 1.

Following the PDM, Commerce issued the Final IDM on April 8, 2025, and published its Final Results on April 15, 2025. Final IDM; Final Results, 90 Fed.

Reg. at 15,689. Commerce explained that necessary information regarding Kumar's affiliation with other companies was not available on the record, and determined that Kumar withheld information, failed to provide information at the requested deadline, and impeded the proceeding by failing to provide the requested information. Final IDM at 7–9. Commerce determined that an application of facts otherwise available with an adverse inference ("AFA") was appropriate. Id. at 7–12. Commerce assigned Bajaj, as a non-selected respondent, the simple average of Kumar and Avid's dumping margins. Final Results, 90 Fed. Reg. at 15,690.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction under 19 U.S.C. § 1516a(a)(2)(B)(iii), and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final results of an administrative review of an antidumping duty order. The Court shall hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I. Commerce's Application of Adverse Facts Available

Commerce determined that Kumar failed to provide accurate, complete, and consistent responses to questions regarding its affiliation with Companies A, B, C,

and D, and with the Borad Family.[2] Final IDM at 4. Kumar had reported passing ownership of Companies A and B between themselves and members of the Borad Family. Id. at 8. For Companies A and B, Kumar admitted affiliation with these companies after April 1, 2023, but failed to provide information requested to prove non-affiliation prior to April 1, 2023, and Commerce determined that Kumar had not sufficiently shown bona fide acquisitions of Companies A and B in 2023. Id. at 7–8. For Companies C and D, record evidence contradicted Kumar's claim of non-affiliation with these companies during the period of review. Id. at 8–9. Commerce determined that Kumar impeded the proceeding significantly by failing to provide documents or responsive answers to Commerce's requests for information concerning Kumar's affiliations. Id. at 9. These issues led Commerce to determine that necessary information was not available on the record and that Kumar withheld necessary information when requested. Id. at 10. Commerce determined that this constituted a failure to cooperate to the best of Kumar's ability and undermined the validity of Kumar's submissions in total, causing Commerce to disregard Kumar's submissions for purposes of calculating an accurate dumping margin. Id.

---

[2] Companies A–D are referred to as such in all public documents in the Administrative Record.

**A. Legal Standard**

Section 776 of the Tariff Act states that if "necessary information is not available on the record," then the agency shall "use the facts otherwise available in reaching" its determination. 19 U.S.C. § 1677e(a)(1). 19 U.S.C. § 1677e(a)(2) permits Commerce to select from facts otherwise available if an interested party: (A) withholds information; (B) fails to provide such information by the deadlines for submission, or in the form and manner requested; (C) significantly impedes a proceeding; or (D) provides such information but the information cannot be verified. 19 U.S.C. § 1677e(a)(2).

Commerce's authority to use facts otherwise available under 19 U.S.C. § 1677e(a) is subject to 19 U.S.C. § 1677m(d), which states that:

> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle.

19 U.S.C. § 1677m(d).

If Commerce determines that "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information" from the agency, then Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." Id.

§ 1677e(b)(1)(A). The United States Court of Appeals for the Federal Circuit ("CAFC") has interpreted these two subsections to have different purposes. See Mueller Comercial de Mexico, S. de R.L. De C.V. v. United States, 753 F.3d 1227, 1232 (Fed. Cir. 2014). Subsection (a) applies "whether or not any party has failed to cooperate fully with the agency in its inquiry." Id. (citing Zhejiang DunAn Hetian Metal Co. v. United States, 652 F.3d 1333, 1346 (Fed. Cir. 2011)). Subsection (b) applies only when Commerce makes a separate determination that the respondent failed to cooperate "by not acting to the best of its ability." Id. (quoting Zhejiang DunAn Hetian Metal Co., 652 F.3d at 1346).

When determining whether a respondent has complied to the "best of its ability," Commerce "assess[es] whether [a] respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." Nippon Steel v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003). This determination requires both an objective and a subjective showing. Id. Commerce must determine objectively "that a reasonable and responsible [respondent] would have known that the requested information was required to be kept and maintained under the applicable statutes, rules, and regulations." Id. (citing Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1336 (Fed. Cir. 2002)). Next, Commerce must demonstrate subjectively that the respondent's "failure to fully respond is the result of the respondent's lack of

cooperation in either: (a) failing to keep and maintain all required records, or (b) failing to put forth its maximum efforts to investigate and obtain the requested information from its records." Id. at 1382–83. Adverse inferences are not warranted "merely from a failure to respond," but rather in instances when Commerce reasonably expected that "more forthcoming responses should have been made." Id. at 1383. "The statutory trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to the best of respondent's ability, regardless of motivation or intent." Id. To use an adverse inference when selecting among the facts otherwise available under Section 1677e(b), Commerce must assess whether the party used its maximum efforts to secure the missing information. Id. at 1382.

**B. Commerce's Use of Facts Otherwise Available for Kumar**

Kumar argues that it cooperated in all aspects of the administrative review and responded in full to the initial and supplemental questionnaires. Pls.' Br. at 10. Kumar contends that there is no nexus between whether Kumar is affiliated with Companies A–D and the calculation of an accurate dumping margin. Id. Defendant argues that distinguishing transactions with unaffiliated entities from transactions with affiliated entities is essential for calculating an accurate normal value of subject merchandise. Def.'s Resp. Pls.' Mot. J. Agency Rec. ("Def.'s Resp. Br.") at 20, ECF Nos. 37, 38. Commerce determined that applying facts

otherwise available was warranted pursuant to all bases under 19 U.S.C. § 1677e(a), and Defendant argues that Kumar's repeated failure to resolve discrepancies when requested supports this determination. Id. at 19–24.

The Court has ruled previously on Commerce's use of facts otherwise available in relation to Kumar's affiliation with Companies A and B in past administrative reviews. See Kumar Indus. v. United States ("Kumar I"), 47 CIT __, 665 F. Supp. 3d 1355 (2023); Kumar Indus. v. United States ("Kumar II"), 49 CIT __, 779 F. Supp. 3d 1329 (2025). In this administrative review, Commerce requested information about Kumar's affiliations and Kumar stated that its owners have been partners in Companies A and B since April 1, 2023. See Initial Questionnaire at Sections A-3–A-6; Submission Section-A Initial Questionnaire Resp. (October 5, 2023) ("Initial Questionnaire Resp."), at 5–6, PR 40. Kumar acknowledged that this was "a change from the prior [periods of review] where Kumar was not affiliated and did not control such entities." Initial Questionnaire Resp. at 5–6. Kumar filed partnership deeds to show its partnership in Companies A and B beginning in April 2023. See Supp. Joint App'x (June 5, 2026) at Exs. A-5(d), A-5(e), PR 19. Kumar explained that it is a company owned by a family, and that this family has ownership interests in other affiliate companies. Initial Questionnaire Resp. at 7; id., Ex. A-3 ("List of Affiliates"), CR 10. Kumar listed Companies C and D as affiliates but claimed that Kumar's partners had submitted

their resignation letters for Companies C and D and that the partners' names had yet to be stricken from Companies C and D's registers due to a dispute between the two ownership families. See Initial Questionnaire Resp. at 7–8; List of Affiliates. Kumar claimed that none of the affiliates are engaged in the production or sale of the subject merchandise. Id. at 7.

Kumar's evidence had contradictions, and GEO Specialty Chemicals, Inc. ("GEO"), a domestic glycine producer and participating party in the administrative review, submitted comments in response to Kumar's Initial Questionnaire Response identifying issues with Kumar's initial responses. See GEO's Comments on Kumar's Section A Questionnaire Resp. (Oct. 26, 2023) ("GEO Comments") PR 53, CR 20. GEO identified evidence that showed that Company B has been a producer of monochloroacetic acid ("MCAA") and glycine as of May 2021. Id. at 3. GEO claimed that, contrary to Kumar's claim that all family members resigned from Company D, documents indicated that a member of Kumar's family ownership continued to be active in managing Company D's operations after the claimed resignation date. Id. at 10. In response, Commerce issued a first supplemental questionnaire on February 26, 2024, that identified contradictory affiliation information submitted by Kumar and requested explanations regarding Kumar's relationship with Companies A–D. First Supp. Questionnaire (Feb. 26, 2024) at 1–17.

Commerce issued a second supplemental questionnaire on May 13, 2024, and asked for further explanation as to why Kumar's owner signed an environmental clearance application in May 2020 for Company C as a "partner." Second Supp. Questionnaire at 7–8. Kumar's response included the following: "Kumar reports that it had already explained and submitted the same in the 1st Supplemental Questionnaire Response in Admin Review 2 to the Department of Commerce, which is re-iterated as under . . . ". Submission of Section A, B, and D Second Supp. Questionnaire Resp. (May 28, 2024) ("Second Supp. Questionnaire Resp.") at 7–8, PR 147. When asked to explain Kumar's owner's motivation for signing the environmental clearance application as a "partner," Kumar explained that the owner's motivation "[stemmed] from his deep sense of responsibility, commitment to the company's compliance and success, and his ongoing influence and dedication even after retirement." Id. at 9.

Commerce asked Kumar to explain why records submitted showed that the principal place of business for Company B is the same address as Kumar's affiliates' principal place of business. Id. at 15, 17 ("Fully explain the specific proximate reason why [Company B]'s 'Principal Place of Business,' is the address used by various Kumar affiliates."). Kumar's response was as follows: "Kumar had duly explained this in 1st SQR." Id. Commerce requested full explanation as to what Company B and the other affiliates that share the same principal place of

business have in common apart from sharing the same principal place of business. Id. Kumar's response was as follows: "Kumar had duly explained this in 1st SQR." Id. at 18.

Commerce issued three supplemental questionnaires in total, identifying contradictions in the record regarding Kumar's affiliations with Companies A–D. See First Supp. Questionnaire; Second Supp. Questionnaire; Third Supp. Questionnaire. Commerce continued to seek an explanation on the plausibility of Kumar's partner retirement deeds for Companies A and B featuring the exact date or day after the partner's death. See Second Supp. Questionnaire at 8–9. Commerce also raised uncertainty about Kumar's explanation that Companies A and B were re-acquired in April 2023 for no renumeration or compensation. See Id. at 6, 9, 15–16.

Plaintiffs argue that Commerce's determination that necessary information was missing from the record was incorrect because Commerce cannot identify a single necessary document that Kumar failed to provide. Pls.' Br. at 13–14. Commerce's supplemental questionnaires repeatedly asked for clarification or explanation of contradictions present in the documents that Kumar submitted related to its affiliations. The burden of production belongs to the party in possession of the necessary information and the burden of creating an adequate record lies with respondents, not Commerce. NTN Bearing Corp. of Am. v.

United States, 997 F.2d 1453, 1458–59 (Fed. Cir. 1993) (citations omitted). Kumar claimed that it became affiliated with Companies A and B as of April 1, 2023, but submitted information that contradicted that claim. Commerce determined that Kumar did not reasonably explain why a retirement deed claiming divestitures from Company A was dated on the exact date of the death of one Kumar partner and a retirement deed from Company B was dated after the death of the same partner. Final IDM at 7–8. Kumar's own submissions showed involvement in Companies A and B by Kumar's partner after the alleged divestiture in 2012 and before the alleged date of re-affiliation in April 2023. Final Application of Adverse Facts Available to Kumar (Apr. 8. 2025) ("AFA Memo") at 3, PR 205, CR 172. Additionally, Commerce determined that Kumar's claim that no renumeration or compensation had been agreed to or provided in re-acquiring Companies A and B was suspect. Id. at 4–5.

In the AFA Memo, Commerce identified that Kumar claimed to have divested interest in Companies C and D, but Kumar's questionnaire responses were non-responsive to Commerce's questions regarding this claimed non-affiliation in light of contradictory record evidence, such as the environmental application. AFA Memo at 5; see Second Supp. Questionnaire Resp. at 8–9. Commerce noted that Kumar also failed to explain sufficiently why Company B shared an address with several of Kumar's affiliates in 2020, before the re-acquisition in April 2023.

AFA Memo at 3. Commerce identified contradictory evidence on the record and Kumar was non-responsive when presented with the opportunity to provide explanations. See Second Supp. Questionnaire Resp. at 17, 18, 22, 24.

Many evidentiary contradictions involved Kumar's non-affiliation with Companies A and B before April 1, 2023, and Kumar's non-affiliation with Companies C and D. It is Kumar's burden to create an adequate record, and Commerce's determination was reasonable that Kumar created a contradictory record that was unreliable. The inconsistencies in Kumar's responses regarding Companies A and B must be considered in relation to the other inconsistencies related to Companies C and D. Commerce decided that Kumar's non-responsiveness to Commerce's questions supported a determination that the administrative record lacked necessary information concerning whether Kumar was affiliated with Companies A, B, C, and D and any Borad Family affiliates during the period of review. Final IDM at 9.

"An affiliation of a foreign exporter or producer with its home market customers or its input suppliers affects significantly the Department's method of calculating normal value, and therefore, the dumping margin." Kumar I, 47 CIT at __, 665 F. Supp. 3d at 1360. Kumar claimed that it was not affiliated with Companies C and D, but record evidence indicated involvement in both companies by Kumar's partners. AFA Memo at 3–6. When provided the chance to explain

such contradictions, Commerce determined that Kumar was non-responsive, referred to responses provided in previous administrative reviews, or indicated that Kumar had already answered the question in a previous questionnaire response. Necessary information regarding Kumar's affiliations to adequately calculate a dumping margin was missing from the record. See id. The Court concludes that Commerce's determination that necessary information was missing from the record and that Kumar withheld information, which significantly impeded Commerce's review, is supported by substantial evidence and otherwise in accordance with law.

**1. Notice and Opportunity to Remedy or Explain a Deficiency**

Commerce's authority under 19 U.S.C. § 1677e(a) to use facts otherwise available is subject to a statutory obligation under 19 U.S.C. § 1677m(d) that requires Commerce to notify a respondent promptly of the nature of a deficiency in the record and to provide the respondent with an opportunity to remedy or explain the deficiency. 19 U.S.C. § 1677e(a); 19 U.S.C. § 1677m(d). Although Kumar argues that Commerce faulted Kumar for failing to explain discrepancies that were never brought to Kumar's attention, Commerce notified Kumar of the issue of contradictions regarding Kumar's affiliations on numerous occasions. Pls.' Br. at 21; Def.'s Resp. Br. at 20–21. Commerce issued three supplemental questionnaires identifying which questions Kumar was not sufficiently responding to and gave Kumar many chances to rectify or explain the issues. See Supp.

Questionnaire; Second Supp. Questionnaire; Third Supp. Questionnaire. The Court concludes that Commerce satisfied its statutory obligation to provide Kumar with notice of deficiencies and an opportunity to remedy or explain such deficiencies prior to resorting to facts otherwise available. The Court concludes that Commerce's use of facts otherwise available is supported by substantial evidence and otherwise in accordance with law.

### C. Application of an Adverse Inference

Commerce determined that Kumar's failure to cooperate to the best of its ability to comply with Commerce's requests for information undermined the validity of the company's submissions entirely, such that Commerce was unable to rely on Kumar's submissions for purposes of calculating an accurate weighted-average dumping margin. Final IDM at 12. This justified the application of an adverse inference in selecting from the facts otherwise available according to Commerce. Id. The "best of its ability" standard involves assessing whether a respondent put forth maximum effort in providing Commerce with "full and complete answers to all inquiries in an investigation." Nippon Steel, 337 F.3d at 1382. Commerce requested information about Kumar's affiliations and explanations for contradictory record evidence multiple times. Several of Kumar's answers were non-responsive. See Second Supp. Questionnaire Resp. at 8, 17–18 ("Kumar had duly explained this in 1st [Supplemental Questionnaire Response]").

Commerce reasonably determined that "Kumar's failure to cooperate to the best of its ability to comply with [Commerce's] requests for information [] undermined the validity of the company's submissions overall, such that [Commerce was] unable to rely on those submissions for purposes of calculating an accurate weighted-average dumping margin." Final IDM at 5, 10, 12; see Nippon Steel Corp., 337 F.3d at 1382. Given the extent of non-responsive answers to Commerce's questionnaires, it was reasonable for Commerce to determine that the record lacked necessary information to conduct an accurate dumping calculation. The Court concludes that Commerce's decision to apply an adverse inference is supported by substantial evidence and in accordance with law.

## II. Commerce's Selection of Bajaj's Rate

Bajaj, a non-selected respondent, challenges the all-others rate that Commerce assigned to Bajaj as being not supported by substantial evidence or otherwise in accordance with law. Pls.' Br. at 21. Bajaj argues that Commerce's all-others rate did not reasonably reflect the potential dumping margins of the non-selected companies and was unfair to apply to Bajaj, who had no control over Kumar's issues. Id. at 22–23. Commerce is authorized by statute to calculate and impose a dumping margin on imported subject merchandise after determining that it is sold in the United States at less than fair value. 19 U.S.C. § 1673. Commerce determines an estimated weighted average dumping margin for each individually

examined exporter and producer and an all-others rate for non-examined companies. 19 U.S.C. § 1673d(c)(1)(B). The general statutory rule for calculating the all-others rate is to average the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and *de minimis* margins, and any margins determined entirely on the basis of facts available, including adverse facts available. Id. at § 1673d(c)(5)(A). If the estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or *de minimis*, or are determined entirely under 19 U.S.C. § 1677e, Commerce may invoke an exception to the general rule. Id. at § 1673d(c)(5)(B).

The Statement of Administrative Action provides guidance that when the dumping margins for all individually examined respondents are determined entirely on the basis of the facts available, or are zero or *de minimis*, the "expected method" of determining the all-others rate is to weight-average the margins determined pursuant to the facts available and the zero and *de minimis* margins, provided that volume data is available. Uruguay Round Agreements Act, Statement of Administrative Action ("SAA"), H.R. Doc. No. 103-316, vol. 1, at 873 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4201. Commerce may depart from the "expected method" and use "any reasonable method" if Commerce reasonably concludes that the expected method is not feasible or results in an

average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers. See 19 U.S.C. § 1673d(c)(5)(B); Navneet Publ'ns (India) Ltd. v. United States, 38 CIT __, __, 999 F. Supp. 2d 1354, 1358 (2014) ("[T]he following hierarchy [is applied] when calculating all-others rates—(1) the '[g]eneral rule' set forth in [19 U.S.C.] § 1673d(c)(5)(A), (2) the alternative 'expected method' under [19 U.S.C.] § 1673d(c)(5)(B), and (3) any other reasonable method when the 'expected method' is not feasible or does not reasonably reflect potential dumping margins."); see also SAA at 873, reprinted in 1994 U.S.C.C.A.N. at 4201; Albemarle Corp. & Subsidiaries v. United States ("Albemarle Corp."), 821 F.3d 1345, 1351–52 (Fed. Cir. 2016) (quoting SAA at 873, reprinted in 1994 U.S.C.C.A.N. at 4201). Commerce must determine that the expected method is not feasible or would not be reasonably reflective of the potential dumping margins for non-investigated exporters or producers based on substantial evidence. Albemarle Corp., 821 F.3d at 1352–53; see also Changzhou Hawd Flooring Co. v. United States, 848 F.3d 1006, 1012 (Fed. Cir. 2017). The exception in 19 U.S.C. § 1673d(c)(5)(B) applies expressly to market economy proceedings but has been extended to non-market economy proceedings as well. Albemarle Corp., 821 F.3d at 1352 n.6; see also Yangzhou Bestpak Gifts & Crafts Co. v. United States ("Bestpak"), 716 F.3d 1370, 1374 (Fed. Cir. 2013). Any reasonable method may include averaging the estimated weighted average

dumping margins determined for the exporters and producers individually investigated. 19 U.S.C. § 1673d(c)(5)(B).

While Commerce is permitted to use various methodologies, "it is possible for the application of a particular methodology to be unreasonable in a given case." Bestpak, 716 F.3d at 1378 (quoting Thai Pineapple Canning Indus. Corp. v. United States, 273 F.3d 1077, 1085 (Fed. Cir. 2001)). All-others rate calculations for non-mandatory, cooperating respondents must bear some relationship to the respondents' actual dumping margins. See generally id. at 1379–80; see also F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("[T]he purpose of [19 U.S.C.] § 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins."). A dumping margin cannot be upheld based on weak record evidence. See Bosun Tools Co., Ltd. v. United States ("Bosun Tools"), No. 2021-1930, 2022 WL 94172, at *4 (Fed. Cir. 2022) (comparing Bestpak, where "the record was 'so thin' that Commerce could not have reasonably 'found evidence to support [its] determination'" to Bosun Tools where, "in contrast, there was no such lack of data").

Bajaj argues that Commerce's choice to assign Bajaj an antidumping rate equal to the simple average of the rates obtained by the two mandatory respondents resulted in a high rate of 28.59% and that Bajaj did not have the opportunity to

contest because the preliminary determination assigned rates of zero percent. Pls.' Br. at 22. Bajaj claims that the rate was unfair and that the Court should instruct Commerce to adopt the all-others rate of 5.29% that was calculated in a previous administrative review. Id. at 23; see Final Results AR3, 88 Fed. Reg. at 77,552. Defendant argues that the calculated all-others rate of a simple average of Avid's zero percent rate and Kumar's AFA rate was a reasonable deviation from the expected method given that Commerce determined that Kumar's submissions and databases were unreliable. Def.'s Resp. Br. at 34–35; see PrimeSource Bldg. Prods., Inc. v. United States ("PrimeSource"), 111 F.4th 1320 (Fed. Cir. 2024). Although Defendant claims that Plaintiffs waived any argument that Commerce did not meet its burden to deviate from the expected method pursuant to PrimeSource, by not explicitly citing PrimeSource and only making bare assertions, see Def.'s Resp. Br. at 35–36, the Court concludes that Plaintiffs' brief sufficiently put Defendant on notice that Plaintiffs are challenging Commerce's calculation method for the all-others rate and thus the argument is not waived.

The presumption that mandatory respondents are representative of the non-selected respondents is essential to the justification for calculating the all-others rate based upon the weighted average of the mandatory respondents. See PrimeSource, 111 F.4th at 1331. Bajaj claims that the simple average and inclusion of an AFA rate in the alternative methodology rendered a dumping rate

that was distortive and punitive. Pls.' Reply Br. at 10, ECF Nos. 44, 45. Given that Commerce sought "to deviate from the expected method, Commerce must affirmatively determine, based on substantial evidence, that the expected method is not feasible or would not be reasonably reflective of the potential dumping margin of the non-selected respondents." PrimeSource at 1330 (quoting Changzhou Hawd Flooring Co., 848 F.3d at 1012 (Fed. Cir. 2017)).

Commerce used a simple average of the dumping margins for the mandatory respondents rather than a weighted average. See Final Results, 90 Fed Reg. at 15,689. Bajaj states that Commerce's all-others rate calculation of 28.59% after applying AFA to Kumar does not reflect the commercial reality or accurately estimate Bajaj's dumping margin. Pls.' Reply Br. at 11. Commerce must determine, based on substantial evidence, whether the expected method is infeasible or would not reasonably reflect the potential dumping margin of non-selected respondents, such as Bajaj. See PrimeSource, 111 F.4th at 1330.

Defendant attempts to argue post-hoc that deviating from the expected method by using a simple average of the mandatory respondents' dumping margins was a reasonable determination of Commerce that was supported by substantial evidence, but Commerce failed to explain in either the Final IDM or the AFA Memo why the deviation was reasonable. See Final IDM at 2; AFA Memo. Commerce's departure from the expected method must be accompanied by a

reasonable conclusion that "the expected method [was] 'not feasible' or 'would not be reasonably reflective of potential dumping margins." See PrimeSource, 111 F.4th at 1330. The Final IDM states that "the dumping margin assigned to Kumar and to the non-selected respondents has changed for these final results," based upon the application of total AFA to Kumar. Final IDM at 2. However, Commerce provided no discussion to show why it reasonably concluded that the expected method was not feasible and would not be reasonably reflective of potential dumping margins. The Court concludes that Commerce's calculation of the all-others rate is neither supported by substantial evidence nor in accordance with law. The Court remands for Commerce to provide further explanation of its determination to deviate from the expected method in accordance with this Opinion.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Commerce's determination to apply total adverse facts available is sustained; and it is further

**ORDERED** that Commerce's determination to deviate from the expected method in calculating the all-others rate is remanded for further explanation in accordance with this Opinion; and it is further

**ORDERED** that Commerce shall file the Remand Redetermination on or before November 13, 2026; and it is further

**ORDERED** that Commerce shall file the Administrative Record for the Remand Redetermination on or before November 20, 2026; and it is further

**ORDERED** that the Parties shall file Comments in Opposition to the Remand Redetermination on or before December 14, 2026; and it is further

**ORDERED** that the Parties shall file Comments in Support of the Remand Redetermination on or before January 13, 2027; and it is further

**ORDERED** that a Joint Appendix shall be filed on or before January 20, 2027.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated: September 14, 2026
New York, New York