A-533-883
Remand: Slip Op. 26-112
**Public Document**
E&C/OVI: LG

***Kumar Industries and Bajaj Healthcare Limited. v. United States*, Court No. 25-00081, Slip Op. 26-112 (CIT September 14, 2026) Glycine from India**

**FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

## I. SUMMARY

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand opinion and order of the U.S. Court of International Trade (the Court) issued in *Kumar Industries and Bajaj Healthcare Limited. v. United States*, Court No. 25-00081, Slip Op. 26-112.[1] This action arises out of Commerce's final results in the administrative review of the antidumping duty (AD) on glycine from India covering the period of review (POR) June 1, 2022, through May 31, 2023.[2]

The Court remanded, for further explanation, Commerce's decision to deviate from the expected method in assigning the non-selected company rate.[3] Consistent with the *Remand Order*, Commerce has provided further explanation regarding its determination to deviate from the expected method; the non-selected company rate remains unchanged from that in the *Final Results* (*i.e.*, 28.59 percent).[4]

## II. BACKGROUND

On June 21, 2019, Commerce published in the *Federal Register* an AD order on glycine from India.[5] On June 1, 2023, Commerce published in the *Federal Register* a notice of

---

[1] *See Kumar Industries and Bajaj Healthcare Limited. v. United States,* Court No. 25-00081, Slip Op. 26-112, (CIT September 24, 2026) (*Remand Order*).
[2] *See Glycine from India: Final Results of Antidumping Duty Administrative Review*, 90 FR 15689 (April 15, 2025) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).
[3] *See Remand Order* at 24.
[4] *See Final Results*, 90 FR at 15690.
[5] *See Glycine from India and Japan: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Orders*, 84 FR 29170 (June 21, 2019) (*Order*).

opportunity to request an administrative review of the *Order*.[6] On August 3, 2023, Commerce published the notice of initiation of the administrative review of the *Order*, covering 30 foreign producers and/or exporters, including Bajaj Healthcare Limited (Bajaj).[7] Relevant here, Commerce selected Avid Organics Private Limited (Avid) and Kumar Industries (Kumar) for individual examination as mandatory respondents; Bajaj Healthcare (Bajaj) was not selected for individual examination.[8]

On July 5, 2024, Commerce published the *Preliminary Results* of the administrative review, finding that neither Avid nor Kumar made sales of subject merchandise at less-than-normal value during the POR.[9] Commerce also rescinded its review for all companies listed in the *Initiation Notice*, except Avid, Bajaj, and Kumar.[10] Because both mandatory respondents were preliminarily assigned an estimated weighted-average dumping margin of zero percent, Bajaj, the only remaining company not selected for individual examination, was also assigned a margin of zero percent.[11] On April 15, 2025, Commerce published the *Final Results*, where it assigned Kumar a margin of 57.17 percent based entirely on adverse facts available (AFA).[12] Consequently, the review-specific rate for Bajaj, the only remaining non-individually examined company, increased from zero percent to 28.59 percent; Commerce employed a simple average for purposes of its calculation.[13] Bajaj challenged Commerce's *Final Results* with respect to Commerce's departure from the expected method in calculating Bajaj's dumping margin.[14]

---

[6] *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review and Join Annual Inquiry Service List*, 88 FR 35835, 35836 (June 1, 2023).
[7] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 FR 51271, 51274 (July 12, 2023).
[8] *See* Memorandum, "Respondent Selection Memorandum," dated August 24, 2023.
[9] *See Glycine from India: Preliminary Results and Rescission, In Part, of Antidumping Duty Administrative Review; 2022–2023*, 88 FR 55565 (July 5, 2024) (*Preliminary Results*).
[10] *Id.*
[11] *Id.,* 88 FR at 55566.
[12] *See Final Results*, 90 FR at 15690.
[13] *Id.*
[14] *See Remand Order* at 21-23.

In its *Remand Order*, the Court held that Commerce's calculation of the non-selected company rate was not supported by substantial evidence or in accordance with law.[15] The Court explained that the SAA provides that when dumping margins for all individually examined respondents are determined entirely on the basis of facts available, or are zero or *de minimis*, the "expected method" of determining the non-selected rate is to weight-average those rates.[16] Commerce may depart from the "expected method" and use "any reasonable method" if Commerce determines that the expected method is not feasible or results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers.[17] The Court concluded that Commerce did not provide a sufficient explanation in either its IDM or AFA Memorandum[18] as to why the expected method was infeasible or would not reasonably reflect the potential dumping margins of non-selected respondents, and why Commerce's deviation from the expected method was reasonable.[19] Accordingly, the Court remanded for Commerce to provide further explanation of its determination to deviate from the expected method.[20]

## III. ANALYSIS

The Tariff Act of 1930, as amended (the Act) and—at the time the underlying administrative review was initiated—Commerce's regulations do not address the rate to be applied to companies not selected for individual examination when Commerce limits its examination in an administrative review pursuant to section 777A(c)(2) of the Act. Consequently, Commerce looked to section 735(c)(5) of the Act, which provides instructions for

[15] *Id.* at 19 (quoting Statement of Administrative Action Accompanying the Uruguay Rounds Agreement Act, H.R. Doc. 103-316, Vol. 1 (1994) (SAA) at 873)).
[16] *Id.* at 19.
[17] *Id.* at 19-20.
[18] *See* Memorandum "Final Application of Adverse Facts Available to Kumar Industries India," dated April 8, 2025 (AFA Memorandum).
[19] *See Remand Order* at 23-24.
[20] *Id.* at 24.

calculating the all-others rate in a market economy investigation, for guidance when calculating the rate for companies which were not selected for individual examination in an administrative review. Under section 735(c)(5)(A) of the Act, the all-others rate is normally "an amount equal to the weighted average of the estimated weighted-average dumping margins established for exporters and producers individually investigated, excluding any zero or *de minimis* margins, and any margins determined entirely {on the basis of facts available}." As section 735(c)(5)(B) of the Act elaborates, however, where all rates are zero, *de minimis*, or based entirely on facts available, Commerce may use "any reasonable method" for assigning the rate to all other respondents. The Court explained that the SAA provides guidance that the expected method in such cases is to weight average the zero and *de minimis* margins and the margins determined pursuant to the use of facts available, provided that volume data is available.[21] The SAA continues that "if this method is not feasible, or it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable means."[22]

In this case, Commerce was unable to employ the expected method (*i.e.*, to weight average the zero margin for Avid and the margin based entirely on facts available for Kumar) to calculate the dumping margin for the non-selected company, Bajaj. Commerce determined that the numerous contradictions regarding affiliation that Kumar could not explain in its questionnaire responses rendered all of its submissions, including its databases, unreliable.[23] Because Commerce found Kumar's submissions unreliable, Kumar's volume data was "unavailable" within the meaning of the SAA. Further, because Kumar's volume data was

[21] *Id.* at 19 (quoting SAA at 873).
[22] *See* SAA at 873.
[23] *See Final Results* IDM at 4 ("we find Kumar's databases unreliable overall to calculate an accurate weighted-average dumping margin"); *see also Remand Order* at 16 (citing AFA Memorandum at 4-6).

unavailable, Commerce resorted to other reasonable means — *i.e.*, a simple average — to calculate the review-specific rate for Bajaj.

The Court agreed that information necessary to adequately calculate a dumping margin was missing from the record.[24] Because reliable volume data remains unavailable to calculate a weighted-average, here, a simple average of the mandatory respondents' rates is the closest approximation to the expected method available. Additionally, the Court has previously upheld Commerce's use of a simple average as a reasonable substitute for a weighted average.[25]

## IV. INTERESTED PARTY COMMENTS

Commerce released its draft results of redetermination on October 16, 2026, in which it provided interested parties with the opportunity to submit comments for consideration in these final results of redetermination.[26] On October 23, 2026, Bajaj submitted timely comments, which are addressed below.[27]

*Bajaj's Comments:*

The following is a verbatim summary of arguments submitted by Bajaj (internal footnotes omitted). For further details, *see* Bajaj's Comments on Draft Redetermination at 1-2.

> Commerce's remand determination ignores its mandate from the Court to explain not only why the expected methodology was "unfeasible," but to also explain why its chosen methodology is "reasonably reflective of potential dumping margins," a requirement that stems from the SAA and relevant case law. A more equitable approach would have been to apply the rate assigned to the one separate company in the immediately preceding administrative review of this antidumping order. In the administrative review covering the period June 1, 2021 to May 31, 2022, Commerce assigned the one separate rate company a margin of 5.29%, based on the calculated rate of the mandatory respondent Avid Organics. *See Glycine from*

[24] *See Remand Order* at 16 (citing AFA Memorandum at 4-6).
[25] *See MacLean-Fogg Co. v. United States,* 100 F.Supp.3d 1349, 1360–61 (CIT 2015) (*MacLean-Fogg*) recognizing that when weight-averaging two respondents' rates would impermissibly reveal business proprietary information (BPI), "Commerce's reasonable practice in such situations is to take {the simple average of the take and an average weighted by the respondents' publicly ranged sales values} and compare each to the actual weighted-average (using BPI available to the agency), in order to arrive at the nearest approximation of the all-others rate contemplated by 19 U.S.C. § 1671d(c)(5)(A)(i)").
[26] *See* Draft Results of Redetermination Pursuant to Court Remand, Kumar Industries and Bajaj Healthcare Limited. v. United States, Court No. 25-00081, Slip Op. 26-112 (CIT September 14, 2026), issued October 16, 2026 (Draft Redetermination).
[27] *See* Bajaj's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated October 23, 2026 (Bajaj's Comments).

> *India: Final Results of Administrative Review; 2021-2022,* 88 Fed Reg. 77,752 (Nov. 13, 2023). Importantly, the previous review involved the exact same mandatory respondents as this review and thus is particularly probative of the all-others rate that should be applied to Bajaj in this review.

**Commerce's Position:**

On remand, Bajaj does not appear to contest Commerce's decision to deviate from the expected method; Bajaj is instead dissatisfied with Commerce's use of a simple average as a substitute.[28] At its core, Bajaj's claim is that Commerce's chosen methodology results in a rate that is not "reasonably reflective of potential dumping margins."[29] According to Bajaj, Commerce should have relied on the non-selected rate from the 2021-2022 administrative review;[30] a rate Bajaj argues "more reasonably reflects the dumping margin that would have been expected for a cooperative {non-selected} company in the 2022-2023 POR."[31] We disagree, and we continue to find that the rate that results from the simple average, here, is *more* reflective of potential dumping margins in the underlying administrative review period than the non-selected rate from the preceding administrative review.

As an initial matter, the Court has previously upheld Commerce's use of a simple average as a reasonable substitute for the weighted-average.[32] More importantly, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has explained that using the rates calculated in the current POR satisfies the statute's "manifest preference for contemporaneity in periodic administrative reviews."[33] Indeed, contrary to Bajaj's claim,[34] the Federal Circuit has elaborated that the rates assigned to mandatory respondents in a review are presumed representative of the

---

[28] *Id.* at 3-4.
[29] *Id.* at 4 (citing SAA at 873).
[30] *Id.* (citing *Glycine from India: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 88 FR 77552 (November 13, 2023) (*Glycine India 2021-2022 Final*).
[31] *Id.* at 5.
[32] *See MacLean-Fogg*, 100 F.Supp.3d at 1360–61.
[33] *See Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345, 1356 (Fed. Cir. 2016).
[34] *See* Bajaj's Comments at 5.

non-selected respondents,[35] and the fact that a mandatory respondent's rate may have been based entirely on AFA rate does not "in and of itself, undermine the presumption of representativeness."[36] More specifically, according to the Federal Circuit, "receiving an AFA rate reflects a common sense inference that the highest prior margin is the most probative evidence of current margins," because, if it were not so, the respondent would have, otherwise, cooperated.[37] It follows then, that Kumar's AFA rate in this case, is not only reflective of its behavior,[38] but that of the non-selected company, Bajaj. And Bajaj has failed to provide *any support* – in law or fact – to abandon that premise.

Finally, Bajaj asserts that, whenever a mandatory respondent receives a rate based entirely on AFA, Commerce "would always replace the expected methodology with a simple average."[39] Bajaj is mistaken; Commerce *has* previously applied the expected method in exactly such circumstances. In *Diamond Sawblades from China*[40] and *Steel Nails from Taiwan*,[41] Commerce applied the expected method to calculate the non-selected rate, averaging a zero with an AFA rate and two AFA rates, respectively; Commerce was upheld on both counts by the Federal Circuit.[42]

---

[35] *See PrimeSource Bldg. Prods., Inc. v. United States*, 111 F.4th 1320, 1331 (Fed. Cir. 2024) (*PrimeSource*) (citing *Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1012 (Fed. Cir. 2017)).
[36] *Id.* at 1332.
[37] *Id.* at 1332-33 (quoting *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1190 (Fed. Cir. 1990) (*Rhone Poulenc*)).
[38] In this case, Kumar – the uncooperative mandatory – was *well aware* that failing to address the contradictions in its reporting would result in an AFA rate; Kumar had received an AFA rate in the three preceding segments. Consequently, Kumar's decision to not explain the contradictions in its reporting *also serves as* circumstantial contemporaneous evidence that its prior rate is the most probative evidence of its current margins. *See Glycine from India: Final Results of Antidumping Duty Administrative Review; 2018–2020*, 86 FR 62508 (November 10, 2021); *Glycine from India: Final Results of Antidumping Duty Administrative Review; 2020–2021*, 87 FR 67870 (November 10, 2022); and *Glycine India 2021-2022 Final*; *see also PrimeSource*, 111 F.4th at 1332-33 (quoting *Rhone Poulenc*, 899 F.2d at 1190).
[39] *See* Bajaj's Comments at 4.
[40] *See Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2015-2016*, 83 FR 17527 (April 20, 2018) (*Diamond Sawblades from China*).
[41] *See Certain Steel Nails from Taiwan: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2019*, 85 FR 76014 (November 27, 2020) (*Steel Nails from Taiwan*).
[42] *See Bosun Tools Co. v. United States*, Nos. 2021-1929, 2021-1930, 2022 WL 94172 (Fed. Cir. January 10, 2022) (upholding Commerce's decision to use the expected method to calculate an all-others rate by averaging a zero and an AFA rate); *see also PrimeSource*, 111 F.4th at 1326 (upholding Commerce's decision to use the expected method to calculate an all-others rate by averaging two AFA rates).

## V. FINAL RESULTS OF REDETERMINATION

For the reasons explained above, for the final results of this redetermination, we continue to find that Commerce's deviation from the expected calculation method to calculate Bajaj's non-selected respondent rate was supported by substantive evidence. Upon a final and conclusive decision in this litigation, as appropriate, Commerce will issue appropriate instructions to CBP consistent with these final results of redetermination.

11/13/2026

X Kasey O'Connor

Signed by: KASEY O'CONNOR

Kasey O'Connor,
Deputy General Counsel,
performing the non-exclusive functions and duties
of the Assistant Secretary for Enforcement and Compliance.